UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA VEGTER,

       Plaintiff,

v.

FORECAST FINANCIAL CORPORATION,
et al.,

       Defendants.
_____/

File No.  1:07-CV-279

HON. ROBERT HOLMES BELL

## O P I N I O N

This matter is before the Court on Defendants Forecast Financial Corporation, Lawgistix LLC, and Kevan Stahl's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to stay the action and compel arbitration.  (Dkt. No. 14.)  Defendants move to compel arbitration under the Federal Arbitration Act ("FAA") and Federal Rule of Civil Procedure 12(b)(1).  Plaintiff Barbara Vegter brought this lawsuit alleging that Defendants violated the federal Credit Repair Organization Act ("CROA"), 15 U.S.C. §§ 1679-1679j, the Michigan Credit Services Protection Act, M.C.L. §§ 445.1821-.1826, and the Michigan Consumer Protection Act, M.C.L. §§ 445.901-.922.  Defendants contend that the written contract between Plaintiff and Defendants contains an arbitration clause that governs this dispute.  Plaintiff contends that this dispute is not subject to arbitration because: the arbitration clause is invalid, the arbitration clause is unconscionable, and claims under

the CROA are nonarbitrable. The Court heard oral argument on this motion on November 19, 2007. For the reasons set forth on record at the November 19, 2007, hearing and for the reasons that follow, the Court finds that the arbitration clause is unconscionable as to the arbitration taking place in Okaloosa County, Florida, but the arbitration clause is otherwise enforceable.

## I.

Plaintiff is a resident of Wyoming, Michigan. Defendant Forecast Financial Corporation is a Florida corporation. Defendant Lawgistix LLC is a Florida limited liability company. Defendant Kevan Stahl is a Michigan resident.

In 2004 Plaintiff was experiencing financial difficulty and was unable to pay her debts. In August 2004 Plaintiff met with Defendant Stahl, who was an agent for Forecast Financial. Defendant Stahl allegedly told Plaintiff that he and Forecast Financial could negotiate with her creditors to reduce her debts by an average of 60 percent. Defendant Stahl also allegedly told Plaintiff that working with Forecast Financial would improve her credit rating.

On August 3, 2004, Plaintiff signed a Service Agreement with Forecast Financial. At that time Plaintiff paid Forecast Financial $5,217.90. According to the Service Agreement, the $5,217.90 was to be divided as follows: $1,169.27 was a service fee to be paid to Forecast Financial and $4,048.63 was to be paid to Plaintiff's creditors. The Service Agreement provides that if Forecast Financial negotiated reductions in Plaintiff's debt greater than 60 percent, then Plaintiff would be entitled to a refund of part of the $4,048.63 and

Forecast Financial would be entitled to an additional fee.

The arbitration clause appears in paragraph ten of the Service Agreement and provides:

> **ARBITRATION:** Any and all disputes between the parties shall be resolved by way of binding arbitration in Okaloosa County, Florida.  FFC is a Florida Corporation.

(Dkt. No. 1, Compl., Ex. 1, Service Agreement 2.)  The Service Agreement is comprised of three pages and the arbitration clause appears on the second page.  The arbitration clause appears in the same font as the rest of the Service Agreement.  Plaintiff initialed at the bottom of the second page of the Service Agreement, next to a statement indicating that she had read the second page.

## II.

The FAA provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  If a plaintiff's claim is governed by an arbitration clause, a court must compel arbitration.  9 U.S.C. § 3.  Under the FAA, a district court must make four threshold determinations before compelling arbitration:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D.*

*Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Plaintiff only raises issues related to the first and third inquiries, whether there is an agreement to arbitrate and whether the federal statutory claim is arbitrable. Plaintiff does not dispute the scope of the arbitration clause. Thus, if the Court determines that the arbitration clause is enforceable, then this dispute is within the scope of and subject to arbitration under the arbitration clause.

"An arbitration agreement may be voided for the same reasons for which any contract may be invalidated . . . . In making this determination, 'ordinary state-law principles that govern the formation of contracts' will apply to this analysis." *Glazer,* 394 F.3d at 450 (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 394 (6th Cir. 2003)). The substantive law of Michigan governs the formation of this contract in consideration of Plaintiff having met with Defendant Stahl in Michigan, Plaintiff having signed the contract in Michigan, and all other relevant interactions between the parties having transpired in Michigan.

    **A.**    **Validity of the Agreement to Arbitrate**

Plaintiff contends that the arbitration clause is not a valid contract because it does not contain all of the following terms: the method for selecting an arbitrator, the rules or procedures for the arbitration, how the costs of the arbitration will be allocated, and how a consumer can institute arbitration proceedings.

As to the arbitration clause not specifying a method for selecting an arbitrator, the FAA provides a procedure for selecting an arbitrator when the arbitration agreement does not designate an arbitrator. Title 9, section 5 of the United States Code provides that if an

arbitration clause does not specify a method for naming an arbitrator,

> then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. Congress clearly foresaw the possibility that arbitration agreements would not specify a method for naming an arbitrator and provided a procedure for federal courts to appoint an arbitrator. The procedure set forth in § 5 makes clear that Congress intended arbitration agreements to be enforceable when such agreements fail to specify a method for naming an arbitrator. To hold that failing to specify a method for naming an arbitrator is a basis for invalidating an arbitration agreement would be to effectively read § 5 out of the United States Code, as such a holding would invalidate the very arbitration agreements to which § 5 applies. Therefore, § 5 precludes a court from invalidating an arbitration agreement because it does not specify a method for naming an arbitrator. *See United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004) ("'We are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.'" (quoting *Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879))).

As to the arbitration clause not specifying any rules or procedures for the arbitration, Plaintiff contends that the arbitration clause in the Service Agreement is similar to the arbitration clause at issue in *Floss v. Ryan's Family Steakhouses, Inc.*, 211 F.3d 306 (6th Cir. 2000). In *Floss* the Sixth Circuit held that the arbitration clause was indefinite and

unenforceable. *Id.* at 315-16. In *Floss*, as part of their applications for employment the plaintiffs signed an agreement with a third-party arbitration services provider. *Id.* at 309. Under the agreement with the third-party arbitration services provider, the employees agreed to submit any dispute with their prospective employer to the third-party arbitration services provider and the arbitration services provider agreed to provide arbitration services for any such dispute. *Id.* at 309-10. The arbitration agreement in *Floss* gave the third-party arbitration services provider complete discretion over the arbitration rules and procedures. *Id.* at 310. Applying Kentucky and Tennessee law, the Sixth Circuit held that the arbitration agreement in *Floss* was "fatally indefinite" because the agreement gave the third-party arbitration services provider "unfettered discretion in choosing the nature of that forum." *Id.* at 315.

In contrast to the arbitration agreement in *Floss*, the arbitration clause in the Service Agreement does not give either party authority to define the nature of the arbitral forum. Contrary to Plaintiff's contentions, the absence of language conveying authority to define the nature of the arbitral forum is not equivalent to language that gives one party exclusive authority to define the arbitral forum. In the absence of language giving one party exclusive authority, both parties would be entitled to challenge any effort by the other to define the nature of the arbitral forum. Therefore, the Court finds that the arbitration clause in the Service Agreement is not "fatally indefinite" based on *Floss*.

As to the arbitration clause not specifying how the costs of the arbitration will be allocated, there is no requirement that an arbitration clause contain information on the

allocation of costs. *CSA-Credit Solutions of Am., Inc. v. Schafer*, 408 F. Supp. 2d 503, 513 (W.D. Mich. 2003) (Bell, C.J.). Under the framework established by *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659-65 (6th Cir. 2003) (en banc), an arbitration clause is not invalid because it is silent on cost allocation. *Schafer*, 408 F. Supp. 2d at 513.

As to the arbitration clause not specifying how a consumer can institute arbitration proceedings, the FAA provides a procedure for the initiation of arbitration proceedings when the written arbitration clause lacks such information. Title 9, section 4 of the United States Code provides that a party to a written agreement for arbitration may petition a district court for "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In addition, as the Court has already explained 9 U.S.C. § 5 provides a procedure for selecting an arbitrator if the arbitration clause is silent on the issue. Therefore, when read in conjunction sections 4 and 5 provide the procedure for the initiation of an arbitration proceeding in instances where the arbitration clause lacks a procedure for initiating an arbitration proceeding. As the FAA provides the necessary procedure, the absence of such language in the arbitration clause is not a basis for invalidating the arbitration agreement.

### B. Unconscionability

Generally applicable contract defenses, such as unconscionability, can invalidate an arbitration agreement consistent with the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Whether an arbitration clause is unconscionable is governed by state law. *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345 (6th Cir. 2006). Under Michigan

law, in order to invalidate a contract provision for unconscionability, the Court must find the provision is both procedurally and substantively unconscionable. *Pichey v. Ameritech Interactive Media Servs., Inc.*, 421 F. Supp. 2d 1038, 1044 -45 (W.D. Mich. 2006) (Bell, C.J.). The inquiries for finding procedural and substantive unconscionability have been phrased as: "'(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?;  (2) Is the challenged term substantively reasonable?'" *Id.* at 1045 (quoting *Allen v. Mich. Bell. Tel. Co.*, 18 Mich. App. 632, 637, 171 N.W.2d 689 (1969)).

As to procedural unconscionability, the Court finds that this was a contract of adhesion. The terms of the contract were not negotiated and Plaintiff had relatively little economic strength in the transaction.

As to substantive unconscionability, the arbitration clause is unreasonable insofar as it requires Plaintiff to travel to Okaloosa County, Florida for the arbitration. In many circumstances requiring a consumer to travel a substantial distance to arbitrate a claim has been found to be unreasonable. *DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F. Supp. 2d 753, 765-66 (E.D. Mich. 2003); *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774, 783 (N.D. Ohio 2003); *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1176-77 (N.D. Cal. 2002). In determining whether requiring the arbitration to be held in Florida is unreasonable, the Court must ask whether the "provision would deter a substantial number of similarly situated potential litigants . . . ." *Morrison*, 317 F.3d at 663. *See Stutler*, 448 F.3d at 346 (indicating that the test from *Morrison* is applicable "to the question of whether an arbitration clause is

enforceable where federal statutorily provided rights are affected."). Requiring a consumer who is experiencing financial distress to travel to Florida would effectively deter such a consumer from pursuing arbitration. At the time the contract was signed Defendants knew that Plaintiff was experiencing financial difficulty and presumably knew that it would be difficult for Plaintiff to arbitrate in Florida. Given those circumstances, the Court finds that requiring Plaintiff to arbitrate in Florida would effectively bar Plaintiff from brining a claim and is substantively unreasonable.

The Court finds that the provision in the arbitration clause that designates Okaloosa County, Florida as the site of the arbitration is both procedurally and substantively unconscionable under Michigan law. Therefore, the Court severs and declares unenforceable the provision in the arbitration clause that designates Okaloosa, Florida as the site of the arbitration.

C.   **Arbitrability of Claims Under the Credit Repair Organization Act**

Plaintiff contends that claims under the CROA are not subject to arbitration. The Court recently addressed whether claims under the CROA are subject to arbitration in *Rex v. CSA-Credit Solutions of America, Inc.*, 507 F. Supp. 2d 788 (W.D. Mich. 2007) (Bell, C.J.). In *Rex* the Court held that claims under the CROA are arbitrable. *Id.* at 800-01. Plaintiff directs the Court to *Alexander v. U.S. Credit Management*, 384 F. Supp. 2d 1003 (N.D. Tex. 2005); however, the Court specifically addressed *Alexander* in the *Rex* decision and declined to follow *Alexander*. *Rex*, 507 F. Supp. 2d at 798-99. Plaintiff has not identified any recent precedent from the Sixth Circuit or otherwise that suggests that *Rex*

was wrongly decided. Also, all of the arguments Plaintiff has offered for nonarbitrability were addressed by the Court in *Rex*. Consistent with the Court's reasoning in *Rex*, the Court holds that claims under the CROA are arbitrable.

Plaintiff contends that even if CROA claims are generally arbitrable, her CROA claim is nonarbitrable because the arbitration clause does not provide an effective substitute for the judicial forum. Under *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991), "the arbitral forum must provide litigants with an effective substitute for the judicial forum; if the fees and costs of the arbitral forum deter potential litigants, then that forum is clearly not an effective, or even adequate, substitute for the judicial forum." *Morrison*, 317 F.3d at 659. Plaintiff contends that because the arbitration clause does not specify the procedures that will govern the arbitration, the arbitration clause fails to provided an effective forum. The Court has previously rejected Plaintiff's contention that the absence of language addressing the procedures that will govern the arbitration is equivalent to giving one party exclusive authority over the procedures. *See supra* Part II.A. The Court finds that with the language designating Okaloosa County, Florida as the site of the arbitration severed, the arbitration clause provides an arbitral forum that is an effective substitute for the judicial forum.

### III.

The arbitration clause in the Service Agreement is valid. The provision in the arbitration clause that designates Okaloosa County, Florida as the site of the arbitration is unconscionable, therefore, the Court has severed that provision. As was acknowledged by

10

Defendants' counsel at the hearing on November 19, 2007, the contract was formed in Grand Rapids, the negotiations took place in Grand Rapids, and all contacts related to the Service Agreement are with Grand Rapids. Also, the Service Agreement provides a Grand Rapids address for Forecast Financial's client enrollment center. In consideration of these facts and the burden that it would impose on Plaintiff, the arbitration should take place in Grand Rapids, Michigan. At the November 19, 2007, hearing, Plaintiff's counsel moved for the Court to appoint an arbitrator under 9 U.S.C. § 5. The Court will appoint an arbitrator from the Court's list of certified arbitrators or certified mediators. *See* W.D. Mich. LCivR 16.3(b), 16.6(d). Pursuant to discussions with counsel at the November 19, 2007, hearing, the parties will file a stipulation proposing an arbitrator by November 29, 2007. The arbitrator appointed by the Court will be selected by the Court based on the stipulation of the parties, unless the parties fail to file a stipulation by November 29, 2007. The arbitration shall be conducted in conformance with the rules and procedures of the American Arbitration Association. An order will be entered consistent with this opinion.

Date:   November 20, 2007          /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE